UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>    v.<br><br>GATEWAY IMPORT MANAGEMENT, INC.,<br>GOOD TIMES USA LLC, and<br>HANOVER INSURANCE CO.<br><br>    Defendants. | Court No. 17- 00232 |

# COMPLAINT

The United States, through its undersigned attorneys, brings this civil action and alleges the following:

1. This action is brought by the United States on behalf of the Department of Homeland Security, U.S. Customs and Border Protection (CBP), to recover unpaid Federal Excise Tax (FET), stemming from violations of 19 U.S.C. § 1592(a), with respect to 63 entries of large cigars made between September 17, 2012, and June 28, 2013. Exhibit A (entry worksheet).

2. This Court possesses exclusive jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1582.

3. At all relevant times, defendant, Gateway Import Management, Inc. (Gateway), was a Florida Corporation with an office at 8719 Lewis River Rd., Delray, FL 33446, and was authorized to import tobacco products into the United States.

4. At all relevant times, defendant, Good Times USA LLC (Good Times) was a Florida limited liability company with an office at 8408 Temple Terrace Hwy., Tampa, Florida 33657, and was in the business of buying and selling tobacco products.

5. At all relevant times, defendant, Hanover Insurance Co. (Hanover), was a corporation doing business at 9100 Broad St., Boca Raton, FL 33434, and was authorized to underwrite surety bonds.

6. At various times relevant to the complaint, Gateway as principal, and Hanover as surety, executed two Continuous Basic Importation and Entry Bonds numbered: (1) 9912LP262 (coverage period September 14, 2012, through March 17, 2013; coverage amount $200,000 per bond year); and (2) 991398833 (coverage period March 18, 2013, through November 13, 2013; coverage amount $300,000 per bond year).

7. Under the terms of the bonds, Hanover agreed with Gateway to jointly and severally guarantee payment of all duties, taxes and charges, not in excess of the coverage amount per bond year, due as a result of the entry of merchandise into the United States during each yearly period covered by each bond.

## Tobacco Excise Taxes

8. CBP is responsible for collecting FET for imported cigars either at the time of importation on a Consumption Entry or following withdrawal from a bonded warehouse. 19 C.F.R. §§ 141.3 19, 144.3 8(c); 27 C.F.R. § 41.62.

9. The FET rate for large cigars is "a tax equal to 52.75 percent of the price for which sold but not more than 40.26 cents per cigar." 26 U.S.C. § 5701(a)(2).

10. The "price for which sold," *id*., for tobacco products in determining the amount of FET is based upon the first sale from an importer to a domestic purchaser in an arm's length transaction. 26 U.S.C. § 4216(b)(1)(C); 26 C.F.R. § 48.4216(b)-2(e). If the product is not sold in an arm's length transaction, then "the tax under this chapter shall (if based on the price for which the article is sold) be computed on the price for which such articles are sold, in the

2

ordinary course of trade, by manufacturers or producers thereof, as determined by the Secretary." 26 U.S.C. § 4216(b)(1).

11.     The governing regulation directs that a sale is not at arm's length if it is "made pursuant to special arrangements between a manufacturer and a purchaser."  26 C.F.R. § 48.4216(b)-2(e).

## Gateway's and Good Times's Violations

12.     From September 17, 2012, and June 28, 2013, Gateway, as importer of record, imported large cigars from the Dominican Republic into the United States under cover of approximately 63 entries, identified in Exhibit A.  Hanover was the surety for all of these entries.

13.     The imported cigars were manufactured in the Dominican Republic and exported by Rolida Investments (Rolida).

14.     Good Times was the consignee for each entry of cigars, and each shipment was sent directly to Good Times's place of business in Tampa, Florida, after release from the warehouse.

15.     The FET for each entry was based on a purported sales price from Gateway to Good Times, which was the purported sales price between Rolida and Gateway, plus one dollar per carton of cigars, as opposed to the arm's length sales price from Good Times to its customers.

16.     The cigars were imported and sold pursuant to a scheme under which Gateway acted as a pass-through entity for Good Times's purchases of cigars from Rolida.

17.     Under this scheme, the business relationship between Gateway and Good Times was not that of a buyer and seller in an arm's length transaction.

18.     Specifically, Gateway and Good Times had an agreement for importing cigars from Rolida.  Under this arrangement, Gateway would provide two invoices to Good Times for

3

every shipment received from Rolida. The first invoice itemized the tobacco products and the cost of goods from Rolida. The second invoice included FET, USDA tobacco buyout payments, customs broker's fees, and harbor maintenance fees, among other fees incident to entry. Good Times would wire funds to Gateway to cover the cost of the first invoice, plus a one dollar per carton commission. On receiving proof Good Times's wired funds had been provided to Rolida, Good Times would wire funds to Gateway for the second invoice covering the taxes and incidental fees. *See* Exhibit B (Good Times contract with Gateway describing arrangement).

19. All funds for the transactions underlying the 63 subject entries were fronted by Good Times.

20. In addition to the control evinced in the contract, Good Times owned the trademarks for all imported products and thus controlled all United States importations of the imported merchandise. 19 U.S.C. § 1526(a).

21. This arrangement involved sales "made pursuant to special arrangements between a manufacturer and a purchaser," 26 C.F.R. § 48.4216(b)-2(e), thus resulting in false declarations of the prices at which the subject cigars were sold. Defendants failed to disclose this "special arrangement" under which it based the value of the merchandise for FET purposes.

22. In addition to omitting the fact that their merchandise had been valued for FET purposes pursuant to the undisclosed "special arrangements" identified above, Gateway and Good Times violated 19 U.S.C. § 1401a by using "transaction value" at the time of entry on the entry documents for the subject entries, despite the fact that the merchandise did not qualify for such treatment.

23. The false statements and/or omissions identified in paragraph 12 through 22 were material because they had the potential to affect determinations made by CBP concerning defendants' liability for FET.

24. Good Times, as the consignee responsible for introducing the merchandise into the commerce of the United States, and Gateway, as the importer of record, did not exercise reasonable care and, thus, violated 19 U.S.C. § 1592(a). Specifically, through their transactions, Good Times and Gateway, without regard for the lawful manner of determining the amount of FET due, caused the amount of FET owed on the subject entries to be understated by $1,188,631.95.

25. As a result of the violations described in paragraphs 12 through 23 above, the United States was deprived of lawful Federal Excise Tax in the amount of $1,188,631.95, all of which remains unpaid.

## COUNT I

26. The allegations contained in paragraphs 1 through 25 above are restated and incorporated by reference.

27. Based their violations of 19 U.S.C. § 1592(a) and under 19 U.S.C. § 1592(d), Good Times and Gateway are liable to the United States for $1,188,631.95 in unpaid Federal Excise Tax owed for the subject entries.

## COUNT II

28. The allegations contained in paragraphs 1 through 27 above are restated and incorporated by reference.

29. Based on Gateway's violations of 19 U.S.C. § 1592(a) and Hanover's agreement to pay any duties, taxes, or fees owed upon entries of merchandise subject to Gateway's

continuous entry bonds, Hanover is liable to the United States for $500,000.00 in unpaid Federal Excise Tax owed for the subject entries dated from July 10, 2012, through March 27, 2015.

## COUNT III

30.     The allegations contained in paragraphs 1 through 29 above are restated and incorporated by reference.

31.     Hanover is liable for mandatory statutory interest running from the date of demand pursuant to 19 U.S.C. § 580.

## COUNT IV

32.     The allegations contained in paragraphs 1 through 31 above are restated and incorporated by reference.

33.     In addition to Hanover's liability for mandatory interest under 19 U.S.C. § 580, Hanover, Gateway, and Good Times are liable prejudgment interest running from the date of entry, and any other interest provided by law.

WHEREFORE, the United States respectfully requests that the Court enter judgment against defendants, Gateway, Good Times, and Hanover, for the relief requested in Counts I through IV above, plus attorney fees, and such other and further relief as may be just and appropriate, including any interest provided by law.

Respectfully submitted,

CHAD C. READLER
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/  CLAUDIA BURKE
Assistant Director

OF COUNSEL:
JULIE A. MILES                              /s/  STEPHEN C. TOSINI
Attorney                                    Senior Trial Counsel
Office of the Assistant Chief Counsel       Department of Justice
U.S. Customs and Border Protection          Civil Division
Miami, FL                                   Commercial Litigation Branch
                                            P.O. Box 480, Ben Franklin Station
                                            Washington, D.C. 20530
                                            Tel: (202) 616-5196
                                            Fax: (202) 514-7969
                                            stephen.tosini@usdoj.gov

September 6, 2017                           Attorneys for Defendant